(No. 5343.   January 14, 1929.)

JAMES W. COX, Appellant, v. EDWIN SNOW, Receiver of the Idaho Copper Company, and IDAHO COPPER COMPANY, a Corporation, Respondents.

[273 Pac. 933.]

Charles P. McCarthy, for Appellant.

Karl Paine, for Respondent Edwin Snow, Receiver.

Johnson & Nixon, for Respondent Idaho Copper Company.

GIVENS, J.—This action was instituted on facts stipulated under C. S., secs. 7305–7307, providing for the submission of a controversy without action, to determine: the

right of the receiver, one of the respondents, to issue receiver's certificates for the purpose of paying unsecured debts of the corporation contracted prior to the receivership; the extent of the lien of such certificates; and their relative priority.

The respondent is an Idaho mining corporation, owning property in Adams county, Idaho, and ninety-nine and one-half per cent of the capital stock of the Idaho Copper Corporation which has mining claims in Adams county, Idaho, and in Baker county, Oregon. It is stipulated that the receiver's report shows claims have been filed for debts incurred prior to the receivership, some of which have been approved, and that substantially the balance are ready for approval, and that the directors of the Idaho Copper Company consented to the issuance of the receiver's certificates sought.

It is further stipulated that a sale by the receiver of the assets of the company at this time "would necessarily result in obtaining therefor less than the true value thereof and could only be made at a serious sacrifice"; that there are at present outstanding and unpaid certificates issued for the expenses of the receivership. The receiver, it is stipulated, asked for the issuance of not to exceed $100,000 in certificates to pay the prior indebtedness above referred to and the court granted such authority.

The proposed certificates, as to character and priority, were to be issued in accordance with the order of the court which was as follows:

"Said receiver's certificates shall be a lien upon the property and assets of said receivership estate, but subject and subordinate to the lien of any receiver's certificates that have been or may be issued by said receiver under and by virtue of an order of this Court dated March 10, 1928, for the purpose of meeting the expenses of said receivership, and any receiver's certificates that may hereafter be authorized for like purposes, and subject and subordinate generally to the expenses of said receivership, and subject and subordinate also to the lien of any mortgage or other valid

lien now of record upon the receivership property or any part thereof if any such there be.

"The receiver's certificates issued under the terms of this order for the payment of creditor's claims shall, irrespective of the date of their issuance, be of equal rank and without priority of one over another and be payable out of the income of said property or the proceeds of the sale thereof if sold and shall be payable on or before two years from the date hereof. Said receiver's certificates shall be substantially in the form hereto attached."

As to priorities, the stipulation, findings and judgment differ from the order in that, in the question as to priorities submitted in the stipulation, and in the findings and judgment, the lien of the certificates sought is made subject and subordinate "only" to the receiver's expenses and the prior recorded mortgages and liens. The findings and judgment control as against the order if there is any difference; hence the court determined the relative position of the lien of these certificates and the lien of any of those claims mentioned in the stipulation, findings and judgment, and as against all other liens not mentioned it would appear the court construed the word "only" as including on the one hand those mentioned, and excluding on the other hand all other kinds.

The general rule is that receiver's certificates may be authorized. (*Central Trust Co. v. H. B. Mehring Co.,* 154 Md. 477, 141 Atl. 111; High on Receivers, 4th ed., secs. 312b, 398c; Clark on Receivers, sec. 565; Tardy's Smith on Receivers, 2d ed., sec. 541; 34 Cyc. 296; note in 128 Am. St. 102.) A receiver's certificate is a promise to pay a definite sum from the receivership fund, and, under exceptional circumstances, may be made a first lien on the receivership property. This priority, however, is not always a feature of such certificates.

Where the receivership involves a railroad, and possibly other public utilities, receiver's certificates having priority over existing secured claims have been used for preserving the property in receivership or for carrying on and operat-

ing the business of the railroad. The paramount public interest, and the protection of the franchise are considered of such importance as to warrant the issuance of certificates even though this involves the displacement of vested rights.

Where the receivership involves a private business, the courts still exhibit a reluctance to permit the issuance of certificates having priorities superior to existing liens for a purpose other than strictly preservation. (*Montgomery Coal Corporation v. Allais*, 223 Ky. 107, 3 S. W. (2d) 180.) This reluctance may be ascribed more to a feeling on the part of the courts that the issuance of certificates in the case of private enterprises is not a sound exercise of judgment rather than to any conclusion that they lack the power to issue the certificates in such cases. Indeed, the failure to distinguish between the power to issue and the propriety of issuing certificates has led to some confusion. (Tardy, *supra*, sec. 541.)

Fundamentally the courts have as much power to issue receiver's certificates in the case of a strictly private enterprise as in the case of a *quasi*-public one. In the case of private enterprises, they have not, however, assumed the same right to displace vested interests which they have assumed in the case of railroads. (*Montgomery Coal Corporation v. Allais, supra;* see, also, note in 40 A. L. R. 244.) Where the certificates have been issued for any other purpose than preservation in connection with private enterprise, they generally have been made subordinate to existing liens, or, if given priority, the rights of existing lien holders have been waived. (*Fidelity Insurance etc. Co. v. Roanoke Iron Co.*, 68 Fed. 623; *Baltimore Bldg. & Loan Assn. v. Alderson*, 90 Fed. 142; *Bernard v. Union Trust Co.*, 159 Fed. 620, 86 C. C. A. 610, 16 L. R. A., N. S., 1118; *Central Trust & Savings Co. v. Chester County Electric Co.*, 9 Del. Ch. 247, 80 Atl. 801.)

The question of whether a certain purpose is one of "preservation" or something else is purely relative. Basically, everything a receiver does is for "preservation." The order appointing a receiver usually reads that he is ap-

pointed for the purpose of "protecting and preserving the property." Even where the receiver operates a railroad, he is preserving the property for the public, the creditors, or the stockholders. But where the courts make a distinction between "preservation" of the property and the "operation" of the property, preservation is usually used in a narrow sense, meaning the prevention of the destruction of the property.

In the following cases, the right to issue certificates was not questioned; the questions involved the right of priority or whether existing lienholders had consented to their priority. In all the cases certificates had been issued for purposes other than preservation. (*American Engineering Co. v. Metropolitan By-Products Co.*, 275 Fed. 34; *Lake v. Mudgett*, 252 Fed. 365, 164 C. C. A. 289; *In re J. B. & J. M. Cornell*, 201 Fed. 381; *Pusey & Jones v. Pennsylvania Paper Mills*, 173 Fed. 634; *Union Trust Co. v. Southern Saw Mills & L. Co.*, 166 Fed. 193, 92 C. C. A. 101; *Bernard v. Union Trust Co., supra; International Trust Co. v. Decker Bros.*, 152 Fed. 78, 81 C. C. A. 302, 11 L. R. A., N. S., 152; *Fidelity Insurance etc. Co. v. Roanoke Iron Co., supra; Baltimore Bldg. & Loan Assn. v. Alderson, supra; International Trust Co. v. United Coal Co.*, 27 Colo. 246, 83 Am. St. 59, 60 Pac. 621; *Fleming v. Anderson*, 220 Ill. App. 570; *Montgomery Coal Corporation v. Allais, supra; Freeman v. Craft*, 220 Ky. 15, 294 S. W. 822; *In re Westchester County Brewery*, 73 Misc. Rep. 352, 131 N. Y. Supp. 16; *Oldroyd v. McCrea*, 65 Utah, 142, 40 A. L. R. 230, 235 Pac. 580; *McDermott v. Pentress Gas Co.*, 82 W. Va. 230, 95 S. E. 841; Fletcher on Corporations, sec. 5351; 23 R. C. L., sec. 96, p. 88; see, also, note in 40 A. L. R. 244.)

These cases are not out of harmony with the plain inference of such Idaho cases as have considered this question. In *Dalliba v. Winschell*, 11 Ida. 364, 372, 114 Am. St. 267, 82 Pac. 107; *Hewitt v. Great Western Beet Sugar Co.*, 20 Ida. 235, 118 Pac. 296; and *Stevens v. Evening Courier*, 31 Ida. 710, 175 Pac. 964, the court was concerned with the

attempt to give priority to certificates which had been issued for purposes other than preservation.

The right to issue certificates for purposes other than "physical preservation" where they did not displace vested rights or where consent was given to such displacement, was recognized in the following cases: (*In re Holmes Mfg. Co.*, 19 Fed. (2d) 239; *Byrnes v. Missouri National Bank*, 7 Fed. (2d) 978; *Smith v. Shenandoah Valley National Bank*, 246 Fed. 379, 158 C. C. A. 443; *Nowell v. International Trust Co.*, 169 Fed. 497, 94 C. C. A. 589; *Glenn v. Martin*, 208 Ala. 247, 94 So. 351; *Decker Bros. v. Berner's Bay Mining Co.*, 3 Alaska, 280; *Belknap Savings Bank v. Lamar Co.*, 28 Colo. 326, 64 Pac. 212; *Armour v. People's Laundry Co.*, 171 N. C. 681, 89 S. E. 19; *Lewis v. Linden Steel Co.*, 183 Pa. St. 248, 38 Atl. 606; *Lazear v. Ohio Valley Steel F. Co.*, 65 W. Va. 105, 63 S. E. 772.)

The above-cited cases demonstrate the right and power of a receivership court to issue certificates with priority for purposes of preservation and likewise where the purpose is other than preservation provided no vested interests are disturbed. The controversies and disputes which have arisen have not centered around this naked power of issuance considered alone.

A mining company of the kind involved herein is a private company and not a public utility. The stipulation does not expressly or impliedly indicate a continuance of the business.

There is no question raised as to the priority of the contemplated receiver's certificates over secured, recorded liens, and in fact the stipulated facts do not indicate that there are any such liens.

The purpose of these certificates is not to pay a debt of the receiver nor are they to be used in paying for what has generally been considered preservation. The stipulation, the form of the certificates and the judgment contemplate that they will be liens on the property with certain priorities. Receiver's certificates are in effect liens on the receivership property in that when validly issued, when the

property is sold, the proceeds must be used to pay off all claims against the receivership property (which necessarily includes receiver's certificates) before anything is paid to the stockholders or owners of the business. These certificates, if issued, would be liens to this extent. (Clark, *supra,* sec. 575.)

The general power to issue certificates must be conceded, and there being no question of priority as against secured recorded liens, the question of the power to issue depends on what priorities these certificates have as against unrecorded secured claims or unsecured claims, and how stockholders will be affected.

So far as the record discloses, the claims which these certificates will pay are unsecured and therefore the holders thereof have no incidental power of immediate action forcing their payment detrimental to secured claims, recorded or unrecorded, or other unsecured claimants or stockholders.

The court has authority to defer the sale of the property, in the hands of the receiver, for a reasonable time, to pay the debts of the company. When property is taken over by a receiver, it is his duty to gather and collect the assets and report the fund to the court for distribution. (Tardy, *supra,* sec. 591.) The question of whether a sale of the receivership property should be made and the terms thereof are matters for determination of the receivership court acting under its discretionary power. (Tardy, *supra,* sec. 641.) In the case of *Boothe v. Summit Coal Mining Co.,* 63 Wash. 630, 116 Pac. 269, it appeared that a receiver had been appointed to take charge of the property pending litigation between the two owners of the coal company. Discussing the power of the receiver to sell the property, the court said:

"The primary purpose of this receivership is not to take possession of the corporation property for an immediate sale, but to hold, conserve and protect it pending the principal litigation and until such time as the issues and controversies arising between the parties may be finally determined. No insolvent corporation is here involved. A court

of equity, holding property by its receiver, may in its discretion, direct a sale prior to final adjudication when the property becomes liable to loss or material depreciation.''

See, also *State ex rel. Dean etc. Co. v. Southern*, 218 Mo. App. 266, 267 S. W. 422; 34 Cyc. 309.

The authorities are in agreement that the receivership must not be unduly prolonged although from some of the cases it would appear that this period may be as long as four or five years.

In the case of *First Federal Trust Co. v. First National Bank*, 297 Fed. 353, involving in receivership a strictly private corporation, the Union Land and Cattle Company, the court said:

''For almost 4 years the processes of the courts against its property have been stayed to enable it to rehabilitate itself and refund or liquidate its indebtedness. Nothing has been accomplished by it during that period, and henceforth the rights of creditors should be the chief concern of the courts. There is no reason or excuse for further continuance of the receivership, except to make a sale of the property for the best price and on the best terms obtainable, and there should be no further delay trusting to or hoping for a change in conditions, or for speculative purposes. How the sale shall be made, when it shall be made, and upon what terms, must, necessarily, be left to the sound discretion of the court below; but in the exercise of that discretion the receiver should be directed to act with energy and with diligence.''

See, also, *In re Old Colony Trust Co.*, 2 Fed. (2d) 407; *Old Colony Trust Co. v. Union Land Co.*, 4 Fed. (2d) 451, involving the same receivership; also, *Wabash R. Co. v. West Side Belt R. Co.*, 197 Fed. 442; *Minot v. Mastin*, 95 Fed. 734, 37 C. C. A. 234.

From the above authorities it is fair to conclude that where a receivership involves a sale, the receivership should be wound up and the sale had at the earliest practicable moment; that the determination of this time is,

within reasonable limits, in the discretion of the receivership court.

Conceding that in the case of a private business, the court should not, except under unusual circumstances, permit the receiver to engage in the operation thereof, there is nothing in the facts before us to indicate that if the receiver were to issue the certificates he would then engage in the operation of the mine. True, the deferring of the sale of the property for two years, the maximum time of the certificates or any intermediate time, which might likewise have occurred if no certificates had been issued, while securing a physical preservation of the property, would probably entail more receiver's expenses than if it were immediately sold. But such expense is uniformly recognized as legitimate.

To say that certificates may not issue would mean that either the creditors whose claims are being urged would not receive their money until the sale of the property or that loss would ensue by reason of the immediate sale.

The purpose of preserving to the stockholders the potential values in the property dependent on an advantageous sale thereof might be as advantageous as the purpose of preserving the physical property. (*Gregg v. Metropolitan Trust Co.*, 197 U. S. 183, 25 Sup. Ct. 415, 49 L. ed. 717; *Cake v. Mohun*, 164 U. S. 311, 17 Sup. Ct. 100, 41 L. ed. 447; *In re Holmes Mfg. Co.*, supra; *Von Boston v. United Rys. Co.*, 8 Fed. (2d) 826; *Moore v. Donahoo*, 217 Fed. 177, 133 C. C. A. 171; *Lloyd v. Chesapeake etc. R. Co.*, 65 Fed. 351.)

The propriety of issuing the certificates herein, as distinguished from the power to issue them, is largely discretionary with the receiver and the trial court. The protesting stockholder does not contest the point of the propriety but does the power, and there is neither in the stipulation nor in the law urged relative thereto any showing that it would not be for the best interests of the stockholder to have the sale deferred.

The entire receivership proceedings were before the trial court which granted the receiver authority to issue the certificates. A fair inference from the facts is that in the receiver's judgment the certificates should issue and that a present sale of the property would entail sacrifice. The fair inference, if not the express terms of the stipulated agreement, is to the effect that the interested parties who made the stipulation, that is, the receiver, the board of directors and the protesting stockholder, considered that a present sale would entail sacrifice and we must conclude by reason of the above that the trial court was of the same mind.

What is proposed, then, is a change in kind of obligation without a change in priority; in other words, the certificates will not be issued to pay any debt of the receiver, that is, no new obligations are to be incurred by him either under the doctrine as applied to public utilities or private companies in preserving or operating the business. Hence, these certificates will have the same priority, as between each other and as against other claims, which the claims paid by these certificates would have had if remaining unpaid.

In the case of *Laughlin v. United States Rolling-Stock Co.*, 64 Fed. 25, the court said:

"As the certificates were none of them issued for the indebtedness of the receiver as such, but were all turned over to creditors of the company for claims accruing prior to the receivership for goods sold to the company in the ordinary course of business or money loaned to it, or for salaries of its officers, or fees of its counsel, there is no warrant in the authorities for giving them any priority either over secured or even unsecured creditors. To do so would be grossly inequitable."

See, also, *Hooper v. Central Trust Co.*, 81 Md. 559, 32 Atl. 505, 512, 29 L. R. A. 262; *Sibley County Bank v. Crescent Milling Co.*, 161 Minn. 360, 201 N. W. 618; 34 Cyc. 306.

These certificates between each other are of equal priority (*Sibley County Bank v. Crescent Milling Co., supra;* note in Ann. Cas. 1913C, 53; 34 Cyc. 306), and as against secured or unsecured claims these certificates will have the same priority that the claims which they pay would have had, if remaining unpaid. (Tardy, *supra,* sec. 575.)

No reason is shown for the issuance of receiver's certificates in an amount in excess of the claims to be paid thereby.

The judgment should be modified to authorize the issuance of receiver's certificates only in an amount equal to the amount of claims to be paid thereby, the lien priority to be the same as possessed by the claims paid by the proceeds of such certificates.

The cause is remanded to the district court for modification of the judgment as above directed, which, when so modified, is affirmed. (*Betts v. Butler,* 1 Ida. 185, 189; *Moore v. Taylor,* 1 Ida. 630, 637; *Basinger v. Taylor,* 36 Ida. 591, 600, 211 Pac. 1085, 1087.)

No costs allowed on this appeal.

Budge, C. J., Taylor and Wm. E. Lee, JJ., and Hartson, D. J., concur.